IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **ROBERT C. KELLER, et al.** ) | |
| ) | |
|    **Plaintiffs,** ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: 3:07cv-1098-WKW |
| ) | |
| **MACON COUNTY GREYHOUND** ) | |
| **PARK, INC.** ) | |
| ) | |
|    **Defendant.** ) | |

_____

| | |
|---|---|
| **MACON COUNTY GREYHOUND** ) | |
| **PARK, INC.** ) | |
| ) | |
|    **Defendant/Third Party Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | |
| **CASH REGISTER SYSTEMS, INC.** ) | |
| ) | |
|    **Plaintiff Third Party Defendant.** ) | |

**DEFENDANT MACON COUNTY GREYHOUND PARK, INC.'s
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Comes now Defendant Macon County Greyhound Park, Inc. (MCGP), by and through its undersigned counsel and submits this Memorandum of Law In Support of Defendant's Motion for Summary Judgment:

### I.    INTRODUCTION

The Plaintiffs filed this suit as a potential class action lawsuit pursuant to the Fair Credit Reporting Act (FCRA) 15 USC §1681 alleging that Defendant Macon County Greyhound Park, Inc. willfully violated the Fair and Accurate Credit Transaction Act of

2003 (FACTA). Plaintiffs claim that Macon County Greyhound Park, Inc. willfully exposed more than five digits of their credit/debit card numbers on their credit/debit card receipts. Plaintiffs filed this action on December 18, 2007. On or about July 7, 2008, MCGP filed a third party action against Cash Register Systems (CRS) (Third Party Defendant). Cash Register Systems is a company that sold, installed and serviced MCGP's point of sale system, including Aloha Software and various equipment.

On December 20, 2010, Plaintiffs filed a motion for class certification. Defendant Macon County Greyhound Park, Inc. has objected to the motion for class certification and the motion is pending before this Honorable Court. On March 5, 2011, Third Party Defendant (CRS) filed a motion for summary judgment.

## II.   SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Rule 56(c), Fed.R.Civ.P., the moving party is entitled to a judgment as a matter of law where no genuine issues as to any material fact exists. The moving party bears the initial burden of proof of showing the absence of any genuine issue of material fact on the matters covered by the Motion for Summary Judgment, but, once the moving party has sustained its burden, the burden then shifts to the non-moving party to demonstrate by "substantial evidence that genuine issues of material fact do exist to warrant the matter being submitted to the finder of fact." *Anderson v. Liberty Lobby, Inc.,* 47, U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202, (1986)*; Behalf of Samples v. City of Atlanta,* 846 F.2d 1328 (11th Cir. 1988)*;* see also *Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1396 (11th Cir. 1994)*,* opinion modified on rehearing *30 F.3d 1347 (11th Cir. 1994).*

In interpreting the substantial evidence rule, the United States Supreme Court has held that [t]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 106 S.Ct. at 1251 (citing *Adickes v. S.H. Kess & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see also First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Dombrowski v. Eastling*, 387 U.S. 82, 87, S.Ct. 1425, 18 L.Ed.2d 577 (1967).  A summary judgment must be granted, under the undisputed facts, if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Real Estate Financing v. Resolution Trust Corp.*, 950 F.2d 1540 (11th Circ. 1992), rehearing denied.  Furthermore, if the non-moving party fails to establish a genuine issue of fact as to an essential element of his case, then the moving part is entitled to summary judgment as a matter of law.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552-53, 01 L.Ed.2d 265 (1986).  Stated differently, a factual dispute will not defeat summary judgment where it is immaterial to the outcome of the issue before the Court.  *See McCormick v. City of Ft. Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003).  The materiality of a factual dispute will be determined by the relevant substantive law.  *Id*. at 1243.

To defeat a motion for summary judgment, the non-moving party must offer evidence of specific facts showing a genuine issue of fact for trial.  *United Steelworkers of America, AFL-CIO v. University of Alabama,* 599 F.2d 56, 61 (5th Cir. 1979).  The non-moving party must show more than mere allegations and conclusory statements.  *Id*. When a party moving for summary judgment "supports his moving with documents

evidencing a high degree of credibility, the opponent must produce convincing proof attacking the documents in order to defeat the motion." *Hales v. First Appalachian Corp.,* 494 F.2d 330, 332-333 (D.C.Ala. 1980). *See e.g.* 10 Wright and Miller, *Federal Practice and Procedure, §2727.*

### III.   [1]UNDISPUTED FACTS

(1)   In 2005, Macon County Greyhound Park, Inc. contracted with Cash Register Systems (CRS) to provide Macon County Greyhound Park, Inc. with a Point of Sales Systems that complied with FACTA. (Depo. of William Ashe, pp. 19-20, 25) (Exhibit 1)

(2)   Macon County Greyhound Park, Inc. purchased from CRS equipment and Aloha software. CRS employee William Ashe originally installed the Aloha software. (Exhibit 1) (Depo. of William Ashe, pp. 19-20)

(3)   CRS provided support and service to Macon County Greyhound Park, Inc. concerning its point of sale system from 2005-2009. (Exhibit 1)

(4)   When CRS installed Aloha point of sale system for MCGP, CRS set up the system so that credit card receipts would not violate the law, including FACTA. CRS set up customers' point of sale system, so they are FACTA compliant. (Depo. of Kenneth Duan, pp. 72-73)   Customers should expect when they obtain a point of sale system from CRS, that their system is compliant with FACTA. (Depo. of Kenneth Duan, pp. 75-76)

(5)   The Aloha system could be set up to show the following on credit/debit card receipts:  a) the full credit card number; b) the last four credit card numbers; and/or

---
[1] All References to Exhibits in Defendant's Memorandum of Law are References to Exhibits Previously Submitted in Support of Defendant's Opposition to Class Certification.

4

c) hide the expiration date; (Depo. of William Ashe, p. 43)

(6) When CRS upgraded MCGP's Aloha Point of Sales System, the system was to be FACTA compliant. (Depo. of Kenneth Duan, pp. 78-79)

(7) On October 21, 2007, Macon County Greyhound Park, Inc.'s reported to Mr. Ashe of CRS that the Aloha System at Macon County Greyhound Park, Inc. had crashed. (Depo. of William Ashe, p. 53)

(8) Mr. Ashe attempted to correct the problem remotely. After he was unsuccessful, Mr. Ashe came to Macon County Greyhound Park, Inc. on October 22, 2007 and worked on Macon County Greyhound Park, Inc.'s Aloha system. Mr. Ashe upgraded the Aloha system and corrected a corrupt graphics file. (Depo. of Mr. Ashe, p. 53) (Exhibit 4)

(9) Macon County Greyhound Park maintains a server room, which requires individuals to sign in and out. Mr. Ashe signed in and out of the server room to work on Macon County Greyhound Park, Inc.'s Aloha system server on October 22, 2007. Mr. Ashe signed in at 9:43a.m. and signed out at 9:54a.m. He signed in again at 10:45a.m. and signed out at 10:48a.m. (Exhibit 5)

(10) On October 22, 2007, after Mr. Ashe upgraded the Aloha software and corrected a corrupt graphics file, neither he nor CRS tested printing receipts to determine if the entire credit card numbers were being printed on the receipts. (Depo. of William Ashe, pp. 90-91)

(11) On November 9, 2007, the Plaintiffs, Attorney Robert C. Keller and Attorney Frank Russo attended a Beasley Allen Legal Seminar in Prattville, Alabama. (Depo. of Frank Russo, pp.16-17)

(12) As a part of the seminar, Attorney Jay Aughtman, one of the counsel for Plaintiffs, presented to the seminar participants a session on FACTA. (Depo. of Frank Russo, pp. 17-19)

(13) Attorney Keller has been licensed to practice law since 1999. (Depo. of Robert Keller, p. 7)  Attorney Russo has practiced law since 1985. (Depo. of Frank Russo, p. 13)  They are partners in the law firm Russo, White & Keller, P. C., Birmingham, Alabama. (Depo. of Robert Keller, p. 11) Both Plaintiffs had previous knowledge of the requirements of FACTA. (Depo. of Robert Keller, p. 13) (Depo. of Frank Russo, pp. 16-17)

(14) On the evening of November 9, 2007, Plaintiffs came to Macon County Greyhound Park, Inc. and purchased items using credit or debit card. (Plaintiffs' complaint)

(15) Russo made the following purchases while he was at Macon County Greyhound Park, Inc. on November 9, 2007:

    a) At 10:59p.m., Russo made a purchase for $23.00. (Exhibit 8)

    b) At 11:26p.m., Russo made a purchase for $19.00. (Exhibit 6)

    c) At 11:56p.m., Russo made a purchase for $10.64. (Exhibit 6)

(16) All of Mr. Russo's purchases were made with a business credit card of his law firm, Russo, White & Keller. (Depo. of Frank Russo, pp. 28-31)  The charges made by Russo were for business expenses, including meals and entertainment. (Depo. of Frank Russo, p. 31)

(17)    Keller made one charge of $4.25, which was made on his personal credit/debit card. Keller produced a receipt with all credit card numbers of the receipt. (Exhibit 7)

(18)    While Russo and Keller were at Macon County Greyhound Park, Inc., they noticed that all of their credit card numbers were exposed on their receipts. Neither, Russo nor Keller informed Macon County Greyhound Park, Inc. about the credit card numbers being exposed on their receipts, although they both knew that all of the credit card numbers should not be shown on their credit card receipts.. (Depo. of Frank Russo, pp. 38-39); (Depo. of Robert Keller, pp. 51-52)

(19)    After discovering all credit card numbers were exposed on his receipts, Russo purchased additional items and observed all credit card numbers on his receipts. (Depo. of Frank Russo, pp. 37-38)

(20)    Russo was not concerned about the exposure of the credit card numbers on his receipt on the night of the incident. (Depo. of Frank Russo, pp. 67-68)

(21)    Russo and Keller discussed, with each other, while at MCGP, the exposure of their credit card numbers on the receipts and wanted to make sure they kept copies of their receipts. Keller saw two or three receipts, of other customers, on the floor at Macon County Greyhound Park that had all credit card numbers exposed. He looked at the receipts and then, threw them in the trash. (Depo. of Robert Keller, pp. 49-52)

(22)    While Russo was at Macon County Greyhound Park, Inc. he saw two or three receipts of other customers on the floor. He saw that the full credit card numbers were exposed on the receipts. Russo put the receipts back on the floor. (Depo. of Frank Russo, pp. 41-42)

7

(23)     Plaintiff Russo did not have a copy of the receipt for the $19.00 transaction he made at 10:59. (Depo. of Frank Russo, p. 26)

(24)     Plaintiff Russo provided copies of two credit card receipts for purchases that he made at Macon County Greyhound Park on November 9, 2007 at 11:26p.m. and 11:55p.m.. (See Exhibit 6)

(25)     Mr. Russo's receipt for the transaction made at 11:26p.m for $23.00, is the merchant's copy of the receipt, not the customer's copy. (Exhibit 6)  Defendant produced the documents it had in its possession concerning the transaction and Defendant had the customer's copy of Mr. Russo's 11:26p.m. transaction. (Exhibit 8)

(26)     Defendant produced credit/debit card receipts in its possession for October 22, 2007 - December 4, 2007. (Exhibit 12)

(27)     In 2007, Barbara Watson was the Office Manager for the Food & Beverage Department at Macon County Greyhound Park, Inc.  Mr. Eric Upshaw was her supervisor. (Depo. of Barbara Watson, pp. 11-12)

(28)     On or about December 5, 2007, Eric Upshaw requested that Ms. Watson look back at credit/debit credit card receipts to see if the credit card numbers were exposed on Macon County Greyhound Park's copies of the receipts. (Depo. of Barbara Watson, p. 19)

(29)     Upon confirming that full credit/debit card numbers were appearing on merchant copies at Macon County Greyhound Park, on December 5 2007, Barbara Watson, called Mr. Ashe with CRS and told him about the problem.  Mr. Ashe instructed Ms. Watson how to correct the problem.  Mr. Ashe asked Ms. Watson whether a particular box was checked that would have masked the credit card numbers on receipts.

Ms. Watson said, "No." Mr. Ashe told Ms. Watson, "I must have forgot to check it." (Depo. of Watson, pp. 74-76)

(30) Ms. Watson alerted the staff and checked to make sure the receipts were not printing the entire receipt numbers. The problem was corrected on or about December 5, 2007. (Depo. of Watson, pp. 35-36); (Exhibit 16)

(31) Macon County Greyhound Park, Inc. maintains the credit/debit card receipts for the Food & Beverage Department for one month and the documents are sent to Birmingham, Alabama for storage. (Depo. of Barbara Watson, pp. 20-21) The waitresses and servers in the Food Service Department turned in their receipts to Ms. Watson on a daily basis. (Depo. of Barbara Watson, pp. 22-23)

(32) Ms. Watson checked to see when the credit card numbers began to be exposed at Macon County Greyhound Park. It was determined that on October 20, 2007, all of the credit card numbers were not being shown on receipts (Exhibit 14).

(33) On October 21, 2007, Macon County Greyhound Park's Aloha system crashed and the cash register terminals were inoperable. (Depo. of Ashe, p. 53; Exhibit 4)

(34) The first merchant receipt that exposed all credit card numbers was on October 22, 2007 at 12:17p.m. (Exhibit 15), two hours after Mr. Ashe upgraded the software and corrected the corrupt graphics files. (Exhibit 5)

(35) On December 19, 2007, Plaintiff filed this lawsuit alleging willful violation of FACTA.

(36) The Plaintiffs have not suffered any damages as a result of their credit card numbers being listed on their receipts. (Depo. of Robert Keller, pp. 32-34) (Depo. of Frank Russo, pp. 45-46)

(37) Plaintiffs seek to represent a class that includes persons who have suffered greater damage than they have experienced, including those who have suffered credit identity. (Depo. of Frank Russo, pp. 46-47)

(38) When CRS worked on MCGP's Point of Sale System from 2005-2009, CRS had access to MCGP's server, remotely through the internet. (Depo. of William Ashe, p. 24)

(39) CRS had remote access to All Information on MCGP's server during the time that they serviced MCGP (Depo. of William Ashe, pp. 186-189)

## IV. ARGUMENT

### A. MCGP Has Not Willfully Violated FACTA

In order to prevail for a violation of 15 U.S.C.§, the Plaintiff must prove that the Defendant willfully violated FACTA and printed more than the last 5 digits of a customer's receipt. A motion for summary judgment is the appropriate time to determine whether the Plaintiffs have demonstrated that Defendant acted willfully in exposing the credit card numbers of the receipt. *Desousa v. Anupam Enterprises, Inc.* 2010 WL 2026114 (M.D. Florida)

In *Safeco Ins. Co. of American v. Burr*, 551 U. S. 47 (2007), the U. S. Supreme Court defined "Willful" for the purpose of FCRA:

> We have said before that "willfully" is a "word of many meanings whose construction is often dependent on the context in which it appears," *Bryan*

*v. United States,* 524 U.S. 184, 191, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) (internal quotation marks omitted); and where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well, see *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 132-133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) ("willful," as used in a limitation provision for actions under the Fair Labor Standards Act, covers claims of reckless violation); *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125-126, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (same, as to a liquidated damages provision of the Age Discrimination in Employment Act of 1967); cf . *United States v. Illinois Central R. Co.,* 303 U.S. 239, 242-243, 58 S.Ct. 533, 82 L.Ed. 773 (1938) ("willfully," as used in a civil penalty provision, includes " 'conduct marked by careless disregard whether or not one has the right so to act' " (quoting *United States v. Murdock,* 290 U.S. 389, 395, 54 S.Ct. 223, 78 L.Ed. 381 (1933))). This construction reflects common law usage, which treated actions in "reckless disregard" of the law as "willful" violations. See W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 34, p. 212 (5th ed.1984) (hereinafter Prosser and Keeton) ("Although efforts have been **\*\*2209** made to distinguish" the terms "willful," "wanton," and "reckless," "such distinctions have consistently been ignored, and the three terms have been treated as meaning the same thing, or at least as coming out at the same legal exit"). The standard civil usage thus counsels reading the phrase "willfully fails to comply" in § 1681n(a) as reaching reckless FCRA violations,[FN9] and this is so both on **\*58** the interpretive assumption that Congress knows how we construe statutes and expects us to run true to form, see *Commissioner v. Keystone Consol. Industries, Inc.,* 508 U.S. 152, 159, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993), and under the general rule that a common law term in a statute comes with a common law meaning, absent anything pointing another way, *Beck v. Prupis,* 529 U.S. 494, 500-501, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000).

The Supreme Court further explained the term "recklessness" and stated:

> While "the term recklessness is not self-defining," the common law has generally understood it in the sphere of civil liability as conduct violation an objective standard: action entailing "an unjustifiably high risk of harm that is either known or so obvious that it should be known." Farmer v. Brennan, 511 U. S. 825, 836, 114 S. Ct. 1970, 128 L. Ed. 2 811 (1994); see Prosser and Keeton \*69 §34, at 213-214. The Restatement, for example, defines reckless disregard of a person's physical safety this way.

"The actor's conduct is in recklessness disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead

11

>a reasonable man to realize, not only that this conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." 2 Restatement (Second) of Torts §500, p. 587 (1963-1964).
>
>It is this high risk of harm, objectively assessed, that is the essences of recklessness at common law.  See Prosser and Keeton §34, at 213 (recklessness requires "a known or obvious risk that was so great as to make it highly probable that harm would follow").

In *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985), the Supreme Court in deciding an ADEA case, stated a violation is "willful" if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by ADEA.  The Supreme Court concluded that Trans World Airlines, Inc. acted reasonably and in good faith.

When the Plaintiffs were asked, in depositions, about the proof or evidence they had that Macon County Greyhound Park, Inc. willfully violated the statues. Plaintiffs testified that their proof was based on the fact that they received credit card receipts with all credit card numbers exposed and they saw two or three other receipts at Macon County Greyhound Park, Inc. that had all of the credit card numbers exposed. (Keller Depo., p. 60) (Russo Depo., pp. 52-53)  The Plaintiffs were unable to give any other details concerning the 2-3 receipts they saw.  There was no evidence to indicate whether the receipts were merchant copy receipts or customer copy receipts. The Plaintiffs' evidence is deficient and does not amount to a willful violation of FACTA.

In deciding whether the Defendant acted willfully or recklessly, the Court should consider the Defendant's actions to comply with FACTA. The undisputed facts reveal that Macon County Greyhound Park, Inc. contracted with Cash Register System in 2005

to provide their point of sale systems.  Cash Registers System installed software to make sure that Macon County Greyhound Park was compliant with FACTA.  The Defendant provided cash register receipts to its customers in compliance with FACTA.  On October 21, 2007, Macon County Greyhound Park, Inc. experienced a problem with their Point of Sale System and contacted CRS.   CRS determined that MCGP's Point of Sale System crashed. After CRS could not repair the system remotely, on October 22, 2007, CRS came to Macon County Greyhound Park, Inc to repair the Point of Sale System.  CRS's employee, Mr. Ashe upgraded the software and repaired a corrupt graphic file.  Mr. Ashe did not sample receipts to determine if the receipts were FACTA compliant.  On November 9, 2007, Plaintiffs Russo and Keller came to Macon County Greyhound Park, Inc. and made purchases using a debit card and a law firm credit card.  Mr. Keller made a purchase at around 8:00p.m.  Mr. Keller noticed that all credit card numbers were shown on the receipt.  Nearly three hours later, after Keller was knowledgeable of the receipt showing all credit card numbers, Attorney Russo made three purchases using the law firm's credit card, beginning at 10:59p.m.  Although the Plaintiffs were aware of the exposure of the credit card numbers on the receipt, Plaintiffs did not tell anyone at Macon County Greyhound Park, Inc. about the receipts exposing all the credit card numbers. When MCGP became aware of the problem with the credit card receipts, they immediately contacted Mr. Ashe of CRS.  Mr. Ashe instructed MCGP on how to correct the problem.  MCGP followed CRS's instructions and corrected the problem on or about December 5, 2007, the same day MCGP was informed of the problem.

There is no proof or evidence before the Court that Macon County Greyhound Park, Inc. willfully violated the statute.  The evidence is to the contrary, it shows Macon

County Greyhound Park, Inc. has taken reasonable steps to comply with the statute. Macon County Greyhound Park, Inc. was continually compliant with FACTA. Macon County Greyhound Park, Inc. was informed about the problems on or about December 5, 2007, and the matter was corrected on the same day.  Macon County Greyhound Park corrected the problem before Plaintiffs' suit was filed in December 17, 2007.  This case is quite different from cases where a retailer failed to make any effort to comply with FACTA.  Whether the exposure of the Plaintiffs' credit card numbers on their receipts were exposed due to a computer glitch or CRS's negligence, that does not amount to willful or reckless conduct on behalf of MCGP.  Thus, the Defendant is entitled to summary judgment for all claims asserted by the Plaintiffs.

### B.  Plaintiff Russo Claims Are Due to Be Dismissed Because FCRA Does Not Cover Business Transaction Nor Does FACTA Apply To Merchant Copy of Transactions

The Defendant is entitled to summary judgment, because Plaintiff Russo claims were purchased with a business credit card and Plaintiff Russo is not a consumer for the purposes of FACTA.  FCRA does not provide a private right of action for corporations. In *Pezl v. Amore MIO, Inc.*, 259 F.R.D. 344 (M. D. ILL 2009), the District Court granted summary judgment where a plaintiff's purchases were made with a business credit card. The Court stated: "the FCRA does not provide a private right of action to business entities and this case involves a transaction with a credit card issued to the entity, CE Design.  As such, Plaintiff is not entitled to relief under the FCRA and there is no 'genuine issue for trial'.

Plaintiff Russo made the purchases at Macon County Greyhound Park, Inc. on November 9, 2007.  All of Mr. Russo's purchases were made with a business credit card of his law firm Russo, White and Keller.  Only Russo and Keller were provided with firm credit cards by their law firm.  The purchases made by Plaintiffs were for business expenses, including meals and entertainment associated with the legal seminar the Plaintiff attended.

There is no dispute that all of Mr. Russo's purchases were made with Plaintiffs' law firm's credit card. For the purposes of this statute, the Plaintiffs' law firm or Mr. Russo does not have a private right of action. Thus, Defendant is entitled to summary judgment as a matter of law.

Additionally, Plaintiff Russo's claim should be dismissed because Russo provided a merchant copy of a receipt for a transaction that occurred on November 9, 2007 at 11:26p.m.  Macon County Greyhound Park, Inc. had the customer copy of the 11:26p.m. transaction.

A merchant's copy of a credit card receipt is not included within the language of the relevant FACTA provision that prohibits anyone engaging in a business transaction to print more than the last 5 numbers of the card number or the expiration date upon any receipt provided to the cardholder. *Turner v. Matad or Argentinian Steakhouse Corp.*, 2008 WL  4935445 (S. D. Fla.) In *Turner*, the U. S. District Court dismissed Plaintiff's FACTA complaint which was based upon a merchant copy of the credit card receipt. The Court found that Plaintiffs' action must be dismissed because it is based solely on the "merchant copy" of the current card receipt which is exempt from the unambiguous language of §1681c(g).  The Court also noted that "if Congress sought to apply the

15

truncation requirements to the "receipts the merchants keep for their records, then, there would be no reason to include language that limited the requirement to receipts that are "provided to the cardholders." FACTA specifically excludes merchant's copies of receipts from traunacation requirement. *Ehrheart v. Bose Corp.*, 2008 WL 64491 (W.D.P.A. 2008) FACTA does not prohibit a merchant from the printing and maintaining copies of receipts containing full card information.  This information is useful, to a merchant, in case questions later arise concerning the validity of a transaction, the identity of the purchase, or in the case of a return, full information may be necessary.

Since there is no violation to print credit/debit card receipts with the entire credit card numbers for receipts maintained by merchants, the Plaintiffs cannot rely on the merchant's receipt to prove their claim.  At least one of the receipts provided by Plaintiffs was a "merchant copy" of the receipt.  Russo provided the merchant copy of the receipt for his transaction on November 9, 2007 at 11:26p.m.  Macon County Greyhound Park is entitled to summary judgment concerning all transactions for which Plaintiffs received a "merchant copy" of the receipts.

## CONCLUSION

Based on the foregoing, Defendant Macon County Greyhound Park, Inc. is due to be granted summary judgment on all claims asserted by the Plaintiffs.

                                                Respectfully submitted,

                                                /s/ Stanley F. Gray
                                                Fred D. Gray (ASB-1727-R63F)
                                                Stanley F. Gray (ASB -8670-A56S)
                                                Gray, Langford, Sapp, McGowan,
                                                  Gray, Gray & Nathanson, P. C.
                                                Post Office Box 830239
                                                Tuskegee, Alabama  36083-0239
                                                (334) 727-4830

**CERTIFICATE OF SERVICE**

I, hereby certify that I have served a true and correct copy of the foregoing instrument upon the following via U. S. Mail, postage prepaid, this the **8th** day of **March 2011**:

William S. Pritchard, III, Esq.
Pritchard McCall & Jones, LLC
800 Financial Center
505 N. 20th Street
Birmingham, Alabama  35203-2605

Cowin Knowles, Esq.
Ball, Ball, Matthews & Novak, P.A.
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama  36109

Joseph "Jay" H. Aughtman, Esq.
Fischer Goldasich Aughtman, LLC
One Federal Place
1819 Fifth Avenue North, Ste. 1050
Birmingham, Alabama  35203

/s/ Stanley F. Gray
**OF COUNSEL**