IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT C. KELLER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:07-CV-1098-WKW [WO] |
| | ) | |
| MACON COUNTY GREYHOUND | ) | |
| PARK, INC., d/b/a Victoryland, | ) | |
| | ) | |
| Defendant, | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CASH REGISTER SYSTEMS, INC., | ) | |
| | ) | |
| Third Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER CERTIFYING RULE 23(b)(3) CLASS

Plaintiffs Robert C. Keller and Frank Russo ("Plaintiffs") filed a single count Complaint (Doc. # 1) against Defendant Macon County Greyhound Park, Inc. ("MCGP"), alleging violations of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g). This cause is before the court on Plaintiffs' Motion for Class Certification (Mot. (Doc. # 75)), which has been fully briefed and is ready for adjudication. Based upon counsel's arguments, the relevant law, and the record as designated, Plaintiffs' motion is due to be granted.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681.  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## II.  FACTUAL BACKGROUND

The undisputed facts are as follows.

In 2005, MCGP purchased credit and debit card point of sale equipment and related Aloha software from Third Party Defendant Cash Register Systems, Inc. ("CRS").  (William Ashe Dep. 19-20 (Doc. # 78, Ex. 2).)  CRS installed the Aloha point of sale software for MCGP, which could be set up to show the following on card-based point of sale receipts: (a) the full card number; (b) the last four card numbers; and/or (c) hide the expiration date on the card.  (Ashe Dep. 43.)  The precipitating incident to this lawsuit occurred on October 21, 2007, when the Aloha software at MCGP crashed.  The next day William Ashe of CRS came on site to MCGP and restored the Aloha system to functionality.  (Ashe Dep. 53.)  On the same day, the Aloha system at MCGP started printing point of sale receipts with all sixteen credit card numbers exposed.  (Ashe Dep. 57-58.)

On November 9, 2007, Plaintiffs Frank Russo and Robert C. Keller, attorneys at the Birmingham-based law firm Russo, White & Keller, were in the Montgomery area attending a legal seminar.  After the first day of the seminar, Plaintiffs decided to visit MCGP. Plaintiff Russo made several purchases at MCGP with the law firm's business credit card that was issued in his name.  (Russo Dep. 28-29 (Doc. # 78, Ex. 10); Russo Receipts (Doc. # 78,

Exs. 6, 8).)  Plaintiff Keller also made at least one purchase using his personal credit card. (Keller Receipt (Doc. # 78, Ex. 7); Keller Dep. 19-20 (Doc. # 78, Ex. 11).)

On all of these receipts, all sixteen credit card numbers were exposed.  Both Plaintiffs immediately noticed that their receipts contained likely FACTA violations.  (Russo Dep. 68-69; Keller Dep. 31 (Doc. # 78, Ex. 11).)  FACTA requires that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number upon any receipt provided to the cardholder at the point of the sale or transaction."  15 U.S.C. § 1681c(g).  Both Plaintiffs had previous knowledge of FACTA, and, in fact, FACTA was a topic of discussion at the legal seminar they had attended earlier that day.  (Russo Dep. 17-19.)

Less than a month after Plaintiffs made their visit, MCGP recognized that its point of sale receipts were displaying all sixteen credit card numbers.  MCGP contacted Mr. Ashe, who instructed MCGP on how to correct the problem.  The problem was corrected on December 5, 2007.  (Barbara Watson Dep. 22-23 (Doc. # 78, Ex. 13).)  It was later discovered that some 2,277 receipts displaying all sixteen card numbers had been printed during this time period.  (Def.'s Interrog. 7 (Doc. # 75, Ex. D).)

Plaintiffs filed this lawsuit on December 18, 2007, and presently ask this court for certification of a class of persons consisting of:

> All persons in the United States of America who, on or after December 4, 2006, Defendant provided a point-of-sale electronically-printed debit or credit card receipt, on which Defendant printed more than five card numbers, at Defendant's place of business in Macon County, Alabama.

Said class excludes anyone who has suffered actual damages as a result of Defendant's actions, any entities who received debit or credit card point-of-sale receipts from the Defendant with more than five card numbers exposed who are not "persons/consumers" as defined by 15 U.S.C. § 1681, *et seq.*, anyone who has filed a similar action against the Defendant, anyone who has had a similar claim previously adjudicated or resolved, officers and directors of the Defendant, judicial officers of the United States and counsel for the parties in this action.

(Mot. 2.)

### III.  STANDARD OF REVIEW

"A district court must conduct a rigorous analysis of the [R]ule 23 prerequisites before certifying a class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (citation and internal quotation marks omitted).  To obtain class certification, a named plaintiff must (1) have standing, (2) satisfy each requirement of Rule 23(a) of the Federal Rules of Civil Procedure, and (3) satisfy at least one of the requirements of Rule 23(b). *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008).  It is the plaintiff's burden to establish every element of Rule 23 and to generally show that class certification is appropriate. *See Vega*, 564 F.3d at 1267 (citing *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003)).

"Rule 23 establishes the legal roadmap courts must follow when determining whether class certification is appropriate." *Valley Drug Co.*, 350 F.3d at 1187.  A class may be formed and any person or group of people may represent the class in litigation if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the named representative parties

4

are typical of the claims or defenses of the class; and (4) the named representative parties will fairly and adequately protect the interests of the class.   Fed. R. Civ. P. 23(a); *see also Valley Drug Co.*, 350 F.3d at 1187-88.  Failure to prove any of the four Rule 23(a) requirements and at least one of the alternative requirements of Rule 23(b) precludes class certification.  *Valley Drug Co.*, 350 F.3d at 1188 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615-18 (1997)).

In determining whether these requirements are met, the court must take the allegations in support of certification as true and try to refrain from analyzing the merits of the case. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).  "'Although the trial court should not determine the merits of the plaintiff's claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied.'"  *Vega*, 564 F.3d at 1266 (quoting *Valley Drug Co.*, 350 F.3d at 1188 n.15).

## IV.  DISCUSSION

### A.    Ascertainability

"Although not explicit in Rule 23(a) or (b), courts have universally recognized that the first essential ingredient to class treatment is the ascertainability of the class."  *Grimes v. Rave Motion Pictures B'ham, L.L.C.*, 264 F.R.D. 659, 663-64 (N.D. Ala. 2010) (citing cases); *see also* 5 James. Wm. Moore *et al.*, Moore's Federal Practice § 23.21[1] (3d ed. 2008) ("Although the text of Rule 23(a) is silent on the matter, a class must not only exist, the class must be susceptible of precise definition.  There can be no class action if the

5

proposed class is 'amorphous' or imprecise.'"). The Second Circuit Court of Appeals has referred to ascertainability as an "implied requirement" of class certification. *In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006).

### 1. *Actual Damages*

Relying on *Grimes*, which is also a FACTA class certification case, MCGP argues that the class is not ascertainable because "there is no method to determine, at this stage, whether the other members of the proposed class suffered actual damages." (Br. in Opposition 10 (Doc. # 78).) As in *Grimes*, Plaintiffs' proposed class description excludes anyone who has incurred "actual damages" on account of the alleged FACTA violations. (Pls.' Br. in Support 2); *see also Grimes*, 264 F.R.D. at 664. Finding that the class was not ascertainable, the *Grimes* court speculated that "theoretically, every FACTA non-compliant receipt that may have been issued by [defendant], except [those] of which [plaintiff] individually complains, caused actual damages to the thus victimized credit-card holder. If all such are excluded, there may be no class." *Grimes*, 264 F.R.D. at 664. The *Grimes* court's decision would indicate that the number of individuals who did not suffer actual damages must be ascertained prior to certification.

This court respectfully disagrees with the *Grimes* court on this point. The class need only be ascertain*able*. Approaching this situation realistically, it is exceedingly unlikely that an individual who was printed a FACTA non-compliant point of sale receipt suffered any actual damages from it. The vast majority of the consumer copies of these receipts have been either filed safely away in an individual's records or properly disposed of. For the few

6

individuals who may have been unfortunate enough to have suffered actual damages caused by the printing of FACTA non-compliant receipts, those individuals may be identified easily and excluded from the class.

Moreover, assume that an identity thief with iniquitous designs lingered by and searched through MCGP's trash receptacles on a regular basis, an activity which surely would have caught the attention of the gaming institution's operators, and managed to collect a substantial number of the FACTA non-compliant receipts, and used those receipts to make purchases from the cards identified on the receipts. Even if this exceedingly unlikely scenario is the reality, a court can always decertify a class. *See* Fed. R. Civ. P. 23(c)(1)(C) (stating that "[a]n order that grants or denies class certification may be altered or amended before final judgment"); *see also Culpepper v. Irwin Mortg. Corp.*, 491 F.3d 1260, 1275 (11th Cir. 2007).

In any case, the question of whether an individual suffered actual damages does not in any way affect the ascertainability of the class. A class must not be amorphous or imprecise in order to pass the ascertainability requirement. *See* Moore's Federal Practice § 23.21[1]. Uncertainties about the existence or number of individuals who have suffered actual damages do not render a class description amorphous or imprecise. Rather, such uncertainties could only affect the numerosity requirement for class certification.

### 2. *Business Card Holders*

MCGP also argues that "the class description[ ] [is] not ascertainable because the class potentially includes credit card holders or consumers that are business entities." (Br. in

Opposition 12.)  MCGP asserts that the class is somehow not ascertainable because Plaintiff Russo used a credit card of Russo, White & Keller that was issued in Plaintiff Russo's personal name to make purchases for business purposes.  (Br. in Opposition 12; Pls.' Reply 4 (Doc. # 83); Russo Dep. 31.)  MCGP cites *Pezl v. Amore Mio, Inc.*, 259 F.R.D. 344 (N.D. Ill. 2009) to support its position that class certification should be denied "based upon alleged FACTA violations used on a business credit card only."  (Br. in Opposition 12.)  The *Pezl* court addressed this argument under the typicality requirement of Rule 23(a), *see id.* at 347-48, and this court will do the same.

### 3.    *Willfulness*

MCGP also argues that "[t]he class description's failure to indicate the necessity of a 'willful' violation[ ] prevents the class from being ascertained."  (Br. in Opposition 13.) Although the willfulness of the non-compliant receipts is a factual issue that will likely predominate the litigation at another point in the proceedings, *see infra*, the court must refrain from analyzing the merits of the case at the class certification stage.  *Eisen*, 417 U.S. at 177.  To the extent that the willfulness of the transactions should be considered at the class certification stage, it should only be considered in evaluating whether there are questions of fact or law common to the class and whether those questions will predominate the litigation (the commonality and predomination requirements).  Accordingly, the willfulness of the non-compliant receipts will be discussed in that context.

### 4.   *Actual Receipts*

Finally, MCGP alleges that the class description is deficient because it fails to specify that the class members "must possess the actual customer copy receipt of the transaction, which shows the credit card numbers exposed."  (Br. in Opposition 13.)   According to MCGP, the failure to require such possession "may result in persons making false claims[,]" thus rendering the class amorphous and unascertainable.  *See Grimes*, 264 F.R.D. at 665 (finding that putative FACTA class was not ascertainable when business did not maintain copies of receipts because "there is no way to determine who was or was not issued a FACTA non-compliant receipt by [defendant]").

Unlike the defendant in *Grimes*, MCGP collected the merchant copies of point of sale receipts on a daily basis, maintained them on site for a month, and then shipped them to a Birmingham, Alabama location for permanent storage.  (Barbara Watson Dep. 20-23 (Doc. # 75, Ex. F).)  In fact, MCGP identified some 2,277 merchant copies of non-compliant point of sale receipts, all of which include enough identifying information to determine who was or was not issued a customer copy of a non-compliant receipt.  (Def.'s Interrog. 7.)  Based on the foregoing, the putative class Plaintiffs seek to have certified is ascertainable.

### B.   <u>The Rule 23(a) Requirements</u>

### 1.   *Numerosity*

The first requirement under Rule 23(a) is that the putative class be "so numerous that joinder of all members is impracticable."  Fed R. Civ. P. 23(a)(1).  "Generally, a class should have no fewer than 21 members and will satisfy the numerosity requirement if it has more

than 40." *Martinez v. Mecca Farms, Inc.*, 213 F.R.D. 601, 605 (S.D. Fla. 2002). It is undisputed that there are 2,277 merchant copies of FACTA non-compliant receipts in this case. (Br. in Support 7; Def.'s Ex. 12 (Doc. # 78, Ex. 12).) Although it is very likely any given individual may have been the recipient of more than one of these 2,277 receipts, it is extremely unlikely that fewer than 40 individuals account for all 2,277. It is equally unlikely that of all of the individuals who account for the 2,277 receipts, there are fewer than 40 who have suffered no actual damages. As discussed above, it is probable that the vast majority of the individuals who were printed non-compliant receipts suffered no actual damages. Joinder of hundreds, potentially thousands, of lawsuits in this case is impracticable; therefore, the numerosity requirement is satisfied. Fed. R. Civ. P. 23(a)(1); *see also Valley Drug Co.*, 350 F.3d at 1187-88.

### 2.    *Commonality*

"A class may be certified only if 'there are questions of law or fact common to the class.'" *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting Fed. R. Civ. P. 23(a)(2)). "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." *Id.* (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). "Commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Id.* (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)).

In this case, Plaintiffs have demonstrated that the overriding factual and legal issues are common to all of the proposed class members. The overriding factual questions will

include whether each member of the proposed class received a FACTA non-compliant receipt from MCGP after the FACTA compliance deadline.  *See Pezl*, 259 F.R.D. at 347 (finding commonality requirement satisfied for class certification of FACTA case because "the common nucleus of operative fact [was] the printing of receipts in violation of FACTA").  MCGP does not dispute that the merchant copies of the receipts are non-truncated.  (Br. in Opposition 5-6; Def's Am. Interrog. Resp. (Doc. # 78, Ex. 12)).  Moreover, another common factual issue will be whether MCGP's alleged non-compliance with FACTA was willful so that the class members are entitled to statutory damages.  (Am. Answer 6 (Doc. # 19)); *see also* 15 U.S.C. § 1681n; *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306-07 (11th Cir. 2009) (describing in detail the statutory history).

A common legal issue will likely be whether FACTA violations can be proved based solely on the merchant copies of the point of sale receipts.  *See Turner v. Matador Argentinian Steakhouse, Corp.*, No. 08cv60968, 2008 WL 4935445, at *1-2 (S.D. Fla. Nov. 18, 2008) (finding that plaintiff could not establish FACTA violation based upon the merchant copy of the receipt he accidentally kept at the point of sale transaction); *see also Ehrheart v. Bose Corp.*, No. 07cv350, 2008 WL 64491, at *4 n.4 (W.D. Pa. Jan. 4, 2008) (noting that FACTA "specifically excludes merchants' copies of receipts from the truncation requirement.").  Because the point of sale transactions occurred several years ago, there is a fair probability that many of these consumers have lost or disposed of the customer copies of the receipts.  The legal issue of whether FACTA violations can be proved based upon the merchant copies of the receipts is one that will be common to many, if not most, of the

11

members of the class.  Accordingly, "there are questions of law or fact common to the class[.]"  Fed. R. Civ. P. 23(a)(2).

### 3.    *Typicality*

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3).  Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."  *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 679 n.72 (11th Cir. 2010) (quoting *Cooper v. S. Co.*, 390 F.3d 695, 713 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006)); *see also Auslander*, 244 F.3d at 811.  "The typicality requirement may be satisfied despite substantial factual differences . . . when there is a 'strong similarity of legal theories.'"  *Williams*, 568 F.3d at 1357 (quoting *Auslander*, 244 F.3d at 811).

According to MCGP, "Plaintiffs['] claims are not typical of the 'proposed class' because Plaintiffs' purchases were made with a business or corporate credit card issued by Plaintiffs' law firm Russo, White & Keller."  (Br. in Opposition 18.)  Therefore, MCGP asserts that "Plaintiffs are subject to a unique defense, because Plaintiffs are suing based upon a credit card number belonging to a corporation."  (Br. in Opposition 18.)

FACTA sets out the violation:  "[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."  15 U.S.C. § 1681c(g).  The Fair Credit Reporting Act ("FCRA") provides the

right to sue: "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any *consumer* is liable to that *consumer* . . . ."  15 U.S.C. § 1681n (emphasis added); *see also Pezl*, 259 F.R.D. at 347 ("FACTA does not contain a separate provision establishing a private cause of action; the right to sue is granted under the FCRA."); *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 156 (S.D.N.Y. 2010) ("The private right of action under [FACTA] is provided in the [FCRA].").  The meaning of "consumer" can be found in the definitions section of the same subchapter: "The term 'consumer' means an individual."  15 U.S.C. § 1681a(c).  Although the FACTA does not limit the violation to consumers or individuals, the FCRA, through which FACTA violations are prosecuted, plainly does.

Based on the remedial limitation in the FCRA, every court to have considered this issue has determined that the FCRA's statutory damages are not available to business customers that are victims of FACTA violations.  *See Friedman-Katz*, 270 F.R.D. at 156 ("[A]ny right to sue under [FACTA] is limited to 'consumers.'") (citing *Follman v. Vill. Squire, Inc.*, 542 F. Supp. 2d 816, 819 (N.D. Ill. 2007); *Hammer v. JP's S.W. Foods, L.L.C.*, No. 08cv339, 2010 WL 3743673, at *7 (W.D. Mo. Sept. 13, 2010) (published); *Pezl*, 259 F.R.D. at 347-48.

It is undisputed that Plaintiff Russo made his purchases on a business credit card (Russo Dep. 28-29) and that those purchases were business expenses (Russo Dep. 31); but at the same time, the credit card was issued in Plaintiff Russo's own name.  (Pls.' Reply 4

13

(Doc. # 83).)  Even though the name on the business credit card is that of an individual, the credit card belonged to the business, and the purchases were admittedly made on behalf of the business.  "Therefore, Plaintiff [Russo] is not entitled to relief under the FCRA because the 'consumer' in this case was [the law firm] and not Plaintiff [Russo himself]."  *Pezl*, 259 F.R.D. at 348 (collecting cases); *see also Vega*, 564 F.3d at 1266 ("'Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied.'") (quoting *Valley Drug Co.*, 350 F.3d at 1188 n.15).  Because Plaintiff Russo is not a consumer entitled to bring suit for FACTA violations under the FCRA, he does not "possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)."  *Thompson*, 610 F.3d at 679 n.72 (quoting *Cooper*, 390 F.3d at 713).

However, Plaintiff Keller did use a personal card to make his purchases.  (Keller Dep. 19-20.)   As a consumer cardholder who suffered no actual damages, Plaintiff Keller "possess[es] the same interest and suffer[ed] the same injury" as the rest of the proposed class members.  *Thompson*, 610 F.3d at 679 n.72 (quoting *Cooper*, 390 F.3d at 713).  Unlike Plaintiff Russo, Plaintiff Keller is not subject to the business card defense.  Plaintiff Keller's claims, therefore, have a sufficient nexus to those of the class at large, *Thompson*, 610 F.3d

at 679 n.72 (quoting *Cooper*, 390 F.3d at 713), and "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).[1]

### 4.      *Adequacy of Representation*

"The adequacy-of-representation requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Busby*, 513 F.3d at 1323 (quoting *Valley Drug Co.*, 350 F.3d at 1189).

MCGP does not contend that Plaintiffs or counsel of record will inadequately prosecute the action. (Br. in Opposition 19-20.) Rather, MCGP argues that "Plaintiffs are not adequate representatives for the class because: 1) the Plaintiffs have an interest antagonistic to the other potential class members, and 2) Plaintiffs' transactions were made with business credit card[s]." (Br. in Opposition 20.) Because the court has already addressed and resolved the business credit card issue in MCGP's favor, the only issue in need of treatment is whether Plaintiff Keller has any substantial conflict of interest to the rest of the class. MCGP argues that this conflict arises because Plaintiff Keller "had an opportunity and responsibility to notify [MCGP]" of the possible FACTA violations. (Br. in Opposition 20.) MCGP does not cite any authority on how Plaintiff Keller's silence creates a conflict of interest with respect to the rest of the class. Although Plaintiff Keller may have chosen

---

[1] Like the unfortunate Super Bowl fans this past year, Plaintiff Russo bought his ticket and showed up early by filing the Complaint, but there is no seat for him at the big game. Because Plaintiff Russo's claims are not typical of the class, he will not be a representative party to this class action lawsuit.

to notify MCGP of the problems with his receipt earlier (and this would have caused MCGP to print fewer FACTA violative receipts than it allegedly did), his decision to the contrary does not implicate a duty to MCGP or the other class members who would not have been provided such receipts had MCGP detected the problem earlier.  Plaintiff Keller's silence does not create any conflict of interest, much less any *substantial* conflict of interest.  *See Busby*, 513 F.3d at 1523.  Plaintiff Keller, as the representative party, "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

**C.**     **Rule 23(b)(3)**

Plaintiff Keller must satisfy at least one of the alternative requirements of Rule 23(b) in order for his proposed class to be certified.  *Valley Drug Co.*, 350 F.3d at 1188 (citing *Amchem*, 521 U.S. at 615-18); *see also Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1189-90 (11th Cir. 2009).  Plaintiff Keller has chosen to rely on Rule 23(b)(3), asserting that common questions of law or fact predominate and that the class action is superior to other methods of proceeding in the case.  (Br. in Support 14.)

**1.     *Common Issues Predominate***

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . monetary relief."  *Babineau*, 576 F.3d at 1191 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)).  "On the other hand, common issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'"  *Id.*

16

(quoting *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996). "Certification is inappropriate if the 'plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims." *Id.* (quoting *Klay*, 382 F.3d at 1255). "The predominance inquiry requires an examination of 'the claims, defenses, relevant facts, and applicable substantive law,' . . . to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." *Id.* (quoting *Klay*, 382 F.3d at 1254).

As discussed above in the commonality inquiry of Rule 23(a)(2), there are questions of fact and law common to the class. However, "the predominance criterion is far more demanding [than Rule 23(a)(2)'s commonality requirement]." *See Williams*, 568 F.3d at 1357 (quoting *Amchem*, 521 U.S. at 623-34). Despite the more rigorous standard, the common questions of fact and law recited above will predominate in this litigation. The factual question of MCGP's willfulness is one that will predominate the litigation as to each and every proposed class member. Furthermore, the issue of whether FACTA violations can be proved based on merchant copies of receipts is a legal issue that will likely be implicated for the vast majority of the proposed class members.[2]

---

[2] All 2,277 merchant copies of the non-truncated receipts were from transactions occurring between October 22, 2007 and December 4, 2007. More than three years have passed since the proposed class members were provided with their customer copy of the receipt. Realistically, not all of the proposed class members will be able to produce the customer copy of the receipt.

17

Plaintiff Keller has adequately shown that "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3).

### 2.      *Superiority of the Class Action*

"The second prong of Rule 23(b)(3) requires a court to determine whether 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Sacred Hearth Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183 (11th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)). "The focus of this analysis is on the 'relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Id.* at 1183-84 (quoting *Klay*, 382 F.3d at 1269). "As a result, the predominance analysis has a 'tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims,' both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability." *Id.* (quoting *Klay*, 382 F.3d at 1269).

The number of potential class members makes other methods, such as joinder or consolidation, impractical in this case. Furthermore, the predominance of factual and legal issues makes the class action the most desirable vehicle for adjudicating the claims Plaintiff Keller is asserting on behalf of the putative class. *See Sacred Heart*, 601 F.3d at 1184.

MCGP introduces three arguments against superiority.  First, MCGP argues that class certification in this case would violate MCGP's due process rights, because the "potential damage award and the actual harm suffered by [the proposed class members] are disproportionate." (Br. in Opposition 25.)  MCGP cites several district court cases and *dicta* from an Eleventh Circuit case to buttress its position.  *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246 (11th Cir. 2003); *Leysoto v. Mama Mia I., Inc.*, 255 F.R.D. 693 (S.D. Fla. 2009); *Ehren v. Moon, Inc.*, No. 09cv21222, 2010 WL 5014712 (S.D. Fla. Dec. 3, 2010). All three cases are distinguishable.

In *London*, the plaintiff sued the defendant in federal court, asserting federal and state law claims arising out of a credit card agreement which included enrollment in a credit life insurance program.  340 F.3d at 1248-50.  Under Florida law, the creditor agent must disclose certain information to the potential buyer of credit life insurance,  Fla. Stat. § 627.679(1)(c)(1), and must file all insurance application forms with the Florida Department of Interior before use.  Fla. Stat. §§ 627.410 and 627.682.  The plaintiff alleged that the defendants failed to comply with these Florida statutes and argued that under Florida common law, an illegal contract is void and unenforceable, and an innocent party to such a contract is entitled to restitution.  *London*, 340 F.3d at 1249.  The plaintiff had only paid $0.41 in premiums on the credit life insurance coverage.  *Id.* at 1250.

The Eleventh Circuit's holding in *London* was that the adequacy of representation requirement of Rule 23(a)(4) was not met because of the close personal and financial ties between plaintiff and his counsel, and because counsel's recovery would have vastly

19

exceeded what any of the class members would have received.  *Id.* at 1255.  However, in a footnote at the end of the opinion, the court stated further that it had "doubt as to whether the class certification could meet Rule 23(b)(3)'s superiority requirement[;] the alleged illegality of the contracts at issue here occurred through the [defendants'] failure to follow the requirements of a complex regulatory scheme, subject to different reasonable interpretations." *Id.* at 1255 n.5.  In addition,  the court noted that "the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff." *Id.* (citing *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 234-35 (9th Cir. 1974) (noting that class treatment lacks superiority when damages "shock the conscience").

This court declines to extend *London*'s observations to this case for several reasons. The first reason is that the relevant portion of the *London* case is clearly *dicta* and was not part of the holding of the case.  The second reason is that the damages in *London* were not statutory.  Giving deference to Congress's determination of the appropriate amount of damages for FACTA violations where no actual harm results, it would be difficult to say that the potential damages in this case of between $100 and $1,000 per violation "shock the conscience." *Kline*, 508 F.2d at 534-35.

*Leysoto* and *Ehren* can be distinguished upon their facts.  The potential class damages in *Leysoto* were "between $4.6 million and $46 million, even though the record reflect[ed] that . . . the [d]efendant's net worth [was] approximately $40,000[.]" 255 F.R.D. at 697; *see also Ehren*, 2010 WL 5014712, at *2 (stating that potential class damages would be "oppressive in consequence and difficult to justify" and indicating that damages would be

"annihilative" of the defendant's business). *Ehren* can be distinguished further because the motion for class certification arose in the context of a default judgment against the defendant. Here, the potential class damages are much less than in the *Leysoto* case and MCGP's net worth is likely much greater than either of the defendants in *Leysoto* or *Ehren*.

MCGP also argues that its compliance efforts "with [the] statute reduce the benefits of this case being treated as a class action." (Br. in Opposition 28.) MCGP argues that any violation was "a 'technical violation' of the statute, it was for a short period of time, and was **NOT** caused by the 'willful acts' of [MCGP]." (Br. in Opposition 28) (emphasis in original). Although the willfulness of MCGP's "technical violations" is perhaps a worthy defense to the class action suit, and indeed MCGP has pleaded its lack of willfulness as a defense, its efforts at compliance do not affect the class action inquiry. MCGP cites *Shroder v. Suburban Coastal Corporation* in support of this theory. 729 F.2d 1371, 1378 (11th Cir. 1984). In *Shroder*, the Eleventh Circuit reviewed for abuse of discretion the district court's denial of class certification based on Truth in Lending Act ("TILA") violations that were "technical in nature." *Id.* at 1378. The district court in *Shroder* described TILA's disclosure requirements as "complex[,]" and this complexity of the statute contributed to the "technicality" of the violations. By contrast, the FACTA statute is anything but complex; there are only two ways to violate it. The court hesitates to describe any violation of FACTA as merely technical, because all violations of FACTA would be technical. Compliance with FACTA does not require great effort or the deciphering of complex statutory schemes, and

21

if MCGP's argument prevailed, any FACTA defendant would be able to shield itself from class action liability by quickly and easily bringing itself into compliance.

Finally, the court is unaware of any litigation concerning this controversy already begun by any other proposed class members. Fed. R. Civ. P. 23(b)(3)(B). And the proposed class members have little interest in controlling the prosecution of their cases in separate actions as the statutory damages are minimal compared to the costs of pursuing each action individually. Fed. R. Civ. P. 23(b)(3)(A). In summary, the class action in this case "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## V. CONCLUSION

Based on the foregoing, it is ORDERED:

1.      The Motion for Class Certification (Doc. # 75) is GRANTED;

2.      The named plaintiff Robert C. Keller is designated as class representative of a Rule 23(b)(3) class defined as follows:

> All persons in the United States of America who, on or after December 4, 2006, Defendant provided a point-of-sale electronically-printed debit or credit card receipt, on which Defendant printed more than five card numbers, at Defendant's place of business in Macon County, Alabama.
>
> Said class excludes anyone who has suffered actual damages as a result of Defendant's actions, any entities who received debit or credit card point-of-sale receipts from the Defendant with more than five card numbers exposed who are not "consumers" or "individuals" as defined by 15 U.S.C. §§ 1681n(a)(1)(A) and 1681a(c), anyone who has had a similar claim previously adjudicated or resolved, officers and directors and employees and agents of the Defendant, judicial officers of the United States and counsel for the parties in this action.

22

3.      The class is certified with respect to the following cause of action:

Any claims for statutory damages under FACTA and the FCRA, 16 U.S.C. §§ 1681c(g) and 1681n(a)(1)(A), against Defendant Macon County Greyhound Park, Inc.

4.      Attorneys Joseph Holland Aughtman, Julian Patterson Hardy, Jr., Madison

Willis O'Kelley, Jr., and William Shelton Pritchard, III, are designated as class counsel.

DONE this 24th day of March, 2011.

_____/s/ W.  Keith Watkins_____
UNITED STATES DISTRICT JUDGE

23