IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ROBERT C. KELLER, individually and as representative of all other persons similarly situated, *et al.* ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | CASE NO. 3:07-CV-1098-WKW [WO] |
| MACON COUNTY GREYHOUND PARK, INC., d/b/a Victoryland, ) ) ) | |
| Defendant, Third Party Plaintiff, ) ) ) | |
| v. ) ) | |
| CASH REGISTER SYSTEMS, INC., ) ) | |
| Third Party Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs Robert C. Keller and Frank Russo ("Plaintiffs") filed a single count Complaint (Doc. # 1) against Defendant Macon County Greyhound Park, Inc. ("MCGP"), alleging violations of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g). The court certified a Rule 23(b)(3) class and designated Plaintiff Keller as the sole class representative. (Doc. # 103.) This cause is before the court on MCGP's Motion for Summary Judgment. (Doc. # 96.) Because Plaintiff Russo (on his own behalf) and Plaintiff Keller (as class representative) have not raised a genuine issue of material fact that MGCP's alleged FACTA violations were willful, MCGP's motion is due to be granted.

Moreover, because summary judgment will be entered in favor of MCGP, third-party Defendant Cash Register Systems, Inc.'s ("CRS") Motion for Summary Judgment (Doc. # 92) on MCGP's claim of indemnity (Third Party Compl. ¶¶ 14-17 (Doc. # 23)) is due to be denied as moot.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681.  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation and internal quotation marks omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may

2

meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); Fed. R. Civ. P. 56(c). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). Furthermore, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (citation and internal quotation marks omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 242 (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position

3

will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*) (A plaintiff's "conclusory assertions . . . in the absence of supporting evidence, are insufficient to withstand summary judgment.").

Hence, when a nonmovant fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

Thus, in cases where the evidence before the court is admissible on its face or can be reduced to admissible form and indicates there is no genuine issue of material fact, and where the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 323-24 (summary judgment appropriate

where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact).

On summary judgment, the facts must be viewed in the light most favorable to the non-movant. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). Hence, "'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" *Id.* (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).

### III. FACTUAL BACKGROUND

Construed in the light most favorable to Plaintiff Russo individually and to Plaintiff Keller as representative of the class, the following facts are established.

In 2005, MCGP purchased credit and debit card point of sale equipment and related Aloha software from CRS. (William Ashe Dep. 19-20 (Doc. # 78, Ex. 2).) CRS installed the Aloha point of sale software for MCGP. Depending on how the software was configured, receipts for transactions either: (a) showed the full card number; (b) showed only the last four card numbers; and/or (c) hid the expiration date on the card. (Ashe Dep. 43.) The precipitating incident to this lawsuit occurred on October 21, 2007, when the Aloha software at MCGP crashed. The next day, William Ashe of CRS came on site to MCGP and restored the Aloha system to functionality. (Ashe Dep. 53.) On the same day, the Aloha system at MCGP started printing point of sale receipts with all sixteen credit card numbers exposed. (Ashe Dep. 57-58.)

On November 9, 2007, Plaintiffs Frank Russo and Robert C. Keller, attorneys at the Birmingham-based law firm Russo, White & Keller, were in the Montgomery area attending a legal seminar. After the first day of the seminar, Plaintiffs decided to visit MCGP. Plaintiff Russo made several purchases at MCGP with the law firm's business credit card issued in his name. (Russo Dep. 28-29 (Doc. # 78, Ex. 10); Russo Receipts (Doc. # 78, Exs. 6, 8).) Plaintiff Keller also made at least one purchase using his personal credit card. (Keller Receipt (Doc. # 78, Ex. 7); Keller Dep. 19-20 (Doc. # 78, Ex. 11).)

On all of these receipts, all sixteen credit card numbers were exposed. Both Plaintiffs immediately noticed that their receipts contained likely FACTA violations.[1] (Russo Dep. 68-69; Keller Dep. 31 (Doc. # 78, Ex. 11).) Plaintiffs Russo and Keller had previous knowledge of FACTA, and, in fact, FACTA was a topic of discussion at the legal seminar they had attended earlier that day. (Russo Dep. 17-19 (Doc. # 78, Ex. 10).)

Ms. Barbara Watson was the office manager of the food and beverage department at MCGP. (Watson Dep. 11-12 (Doc. # 78, Ex. 13).) One of Ms. Watson's duties as office manager was to collect the merchant copies of credit card receipts on a daily basis and to separate the receipts into "two areas, Visa [and] Mastercard together and American Express." (Watson Dep. 26.) After sorting the receipts into categories, Ms. Watson testified that she would "[j]ust add the totals, and put [ ] tape around it[.]" (Watson Dep. 27.) Ms. Watson

---

[1] FACTA requires that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g).

added the totals from the receipts in order to "check [the receipt totals] against the report to see if we had all the receipts." (Watson Dep. 22-23.) She was never told to "watch out" for FACTA violations during her daily review of the receipts. (Watson Dep. 67.) After one month in Ms. Watson's office, the receipts would be transferred off-site to be stored for at least five years. (Def.'s Suppl. Interrog. Resp. 10 (Doc. # 75, Ex. E).)

Less than a month after Plaintiffs Russo and Keller made their visit, MCGP recognized that its point of sale receipts were displaying all sixteen credit card numbers. According to MCGP, the problem was detected by Ms. Watson after being directed by Mr. Eric Upshaw, food and beverage manager, to review the receipts to see if the credit card numbers were exposed. After discovering the problem, MCGP contacted Mr. Ashe, who instructed MCGP on how to correct the problem. According to CRS, Mr. Ashe discovered the problem after receiving a call from another customer. (Ashe Dep. 146 (Doc. # 78, Ex. 2).) Deciding to check all of CRS's customer accounts, Mr. Ashe discovered the problem at MCGP and fixed it remotely. (Ashe Dep. 147-48.) It is undisputed that MCGP did not discover it was printing non-truncated receipts until December 5, 2007, and that the problem was corrected on the same date. (Watson Dep. 22-23.) Some 2,277 receipts displaying all sixteen card numbers had been printed between October 22, 2007, and December 5, 2007. (Def.'s Interrog. Resp. 7 (Doc. # 75, Ex. D).)

## IV. DISCUSSION

### A. "Willfully"

MCGP's principal argument in favor of summary judgment is that it did not willfully print the non-truncated FACTA-violative receipts. The Fair Credit Reporting Act ("FCRA") provides the right to sue for FACTA violations: "Any person who *willfully* fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . . ." 15 U.S.C. § 1681n (emphasis added). The Supreme Court recently propounded on the FCRA's definition of "willful" in *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007). Consistent with prior Supreme Court decisions that examined the definition of "willfully" in the context of statutorily created civil liability, the Court held that willfully "[covers] not only knowing violations of a standard, but reckless ones as well." *Id.* (collecting cases).

Plaintiffs Russo and Keller have raised no genuine issue of material fact that MCGP knowingly violated FACTA. Although Plaintiffs highlight MCGP's and CRS's dispute regarding the chain of events which led to MCGP becoming aware of the non-truncated receipts, there is no argument or any supporting facts that MCGP acquired knowledge that it was printing FACTA violative receipts prior to December 5, 2007.

Thus, Plaintiffs argue that "the facts of this case demonstrate [MCGP's] reckless disregard [of FACTA and FCRA]." (Pls.' Br. in Opposition 7 (Doc. # 109).) "While 'the term recklessness is not self-defining,' the common law has generally understood it in the

sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco Ins. Co. of Am.*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). "It is this high risk of harm, objectively assessed, that is the essence of recklessness at common law." *Id*. at 69. "Thus, a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*.

Assuming, but not deciding, that the printing of the non-truncated receipts in violation of FACTA does create a "high risk of harm," the court finds that Plaintiffs still have not raised a genuine issue of material fact that MCGP engaged in "action" or "ran a risk" that made the possibility of resulting harm "so obvious that it should [have been] known." *Safeco Ins. Co. of Am.*, 551 U.S. at 68. Rather, Plaintiffs resort to conclusory statements without laying any factual basis for those conclusions. (*See, e.g.,* Pls.' Br. in Opposition 8 ("MCGP has not, and frankly cannot, explain their [sic] reckless disregard over this 6 week period.").) There is no evidence that MCGP engaged in any form of reckless disregard of FACTA during this period. Its point-of-sale Aloha software, which it obtained from and contracted with CRS to install and maintain, unexpectedly crashed. Plaintiffs have not alleged any facts that would support a conclusion that the software crash on October 21, 2007, was on account MCGP's recklessness. Nor is there any factual basis for imputing recklessness to MCGP

9

when it promptly called Mr. Ashe of CRS on October 22, 2007, to come onsite to fix the initial crash. Moreover, there is no evidence of reckless disregard once MCGP did eventually acquire knowledge of the FACTA violations. MCGP endeavored to have the system fixed on December 5, 2007, the very same day it learned of the non-truncation problem.

The fact that MCGP did not discover that it was printing FACTA-violative receipts for several weeks is the only possible basis for imputing recklessness to MCGP. Because the merchant copies of the receipts were collected and reviewed by Ms. Watson on a daily basis, and stored in her office for at least one month before being sent off-site, Ms. Watson is the most likely person to have been able to discern that the receipts contained FACTA violations. However, Ms. Watson testified that she only reviewed the receipts in order to add up the totals; she did not check for FACTA violations.[2] Based on Ms. Watson's review of the receipts to check only their totals, Plaintiffs jump to the conclusion that "MCGP just chose to recklessly disregard the FACTA violations." (Pls.' Br. in Opposition 9.) Although unstated, the only way to bridge Plaintiffs' gap between Ms. Watson's review of the totals and MCGP's alleged recklessness regarding FACTA violations is to argue that MCGP was reckless in not training Ms. Watson to spot FACTA violations or in not directing Ms. Watson to review the receipts for possible FACTA violations. Even though this failure to erect a second line of defense (the Aloha software being the first line) against FACTA violations

---

[2] Furthermore, the record is unclear as to whether Ms. Watson would have recognized non-truncation to be a statutory violation.

could *conceivably* amount to carelessness on the part of MCGP, Plaintiffs' brief and the record are wholly devoid of any coherent argument that it amounts to reckless disregard. *See Safeco Ins. Co. of Am.*, 551 U.S. at 69 (reckless disregard only shown if "the company ran a risk of violating the law *substantially greater* than the risk associated with [mere carelessness]") (emphasis added).

Because Plaintiffs have failed to create a genuine issue of material fact that MCGP wilfully violated FACTA, MCGP's other arguments in favor of summary judgment will not be considered. *See Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.").

**B.     Effect of Summary Judgment on the Class Action**

Rule 23(c)(3) states that "[w]hether or not favorable to the class, the judgment in a class action must . . . for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusions, and whom the court finds to be class members." Fed. R. Civ. P. 23(c)(3). The court certified a Rule 23(b)(3) class on March 24, 2011. In this case, class notice pursuant to Rule 23(c)(2)(B) has not yet been issued. Because notice has not been issued to the potential class members, there are currently no members to the class aside from the class representative himself. Thus, the court's granting of summary judgment against Plaintiffs, and specifically class representative Plaintiff Keller, renders the task of providing notice moot.

## V.  CONCLUSION

Accordingly, it is ORDERED that:

(1) MCGP's Motion for Summary Judgment (Doc. # 96) is GRANTED; and

(2) CRS's Motion for Summary Judgment (Doc. # 92) is DENIED as moot.

An appropriate judgment will be entered.

DONE this 25th day of April, 2011.

                                          /s/ W.  Keith Watkins
                                 UNITED STATES DISTRICT JUDGE